UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:22CV-P126-JHM

ERIK MICHAEL WALLACE *et al.*                                        PLAINTIFFS

**v.**

LOUISVILLE METRO DEPARTMENT
OF CORRECTIONS *et al.*                                               DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the motion for summary judgment filed by Defendant

Martin Baker.  (DN 54).  Plaintiff Dallas Murphy-Johnson filed a response to the motion (DN 64),

and Defendant filed a reply.   (DN 65).   For the following reasons, the motion for summary

judgment will be granted.

**I.**

Plaintiff, a pretrial detainee at the Louisville Metro Department of Corrections (LMDC) at

the time he filed suit, filed the original complaint on February 28, 2022.[1]  Plaintiff initiated this

action with two other Plaintiffs.  However, the Court dismissed the other two Plaintiffs for lack of

prosecution pursuant to Fed. R. Civ. P. 41(b).  (DNs 12 and 17).  The Court then gave Plaintiff an

opportunity to file an amended complaint which contained only the claims he sought to bring on

his own behalf.  (DN 21).  Plaintiff then filed an amended complaint signed under penalty of

perjury. (DN 26).  Plaintiff asserted that on February 12, 2022, "a fight occured involving me and

several other inmates versus another inmate."  (*Id.*, PageID.67).  He asserted that during the

---

[1] Under the prison-mailbox rule, a prisoner's document is deemed filed when presented to prison officials for mailing. *Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).  If a filing does not include a notarized statement or declaration confirming when it was placed in the prison's mail system, a court must look to the date on the postmark.  *See Powell v. Mich. Dep't of Corr.*, No. 22-2162, 2023 U.S. App. LEXIS 11076, at *2 (6th Cir. May 2, 2023).  Plaintiff did not include a notarized confirmation of the date in the original complaint, but the envelope in which it was mailed is postmarked February 28, 2022.

investigation an officer entered the dormitory and "immediately handcuffed and removed only me from the dorm." (*Id.*). Plaintiff alleged that on February 13, 2022, he and other inmates were informed by another officer "that an order came directly from assistant dir. M. Baker to put us immediately on lockdown for a period unknown." (*Id.*, PageID.68). He continued, "While on 23 and 1, I myself and other inmates asked multiple officers . . . when we would get a disciplinary report he stated sometime next week." (*Id.*). He also stated that they asked multiple officers "for several weeks when would we be removed from our 23 and 1" and that "they stated they didn't know it's up to M. Baker." (*Id.*). Plaintiff asserted, "I remained on lockdown 23 hours a day for a period that stretched over a month." (*Id.*).

The Court construed Plaintiff's allegations as a claim for violation of the Due Process Clause of the Fourteenth Amendment. Upon initial review pursuant to 28 U.S.C. § 1915A, the Court allowed the claim to proceed for further development against Defendant Baker in his individual capacity. (DN 28, PageID.80). The Court dismissed all other claims and Defendants. (*Id.*).

## II.

### A.

Defendant argues that he is entitled to summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies before filing suit as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (DN 54). Defendant maintains that Plaintiff "filed a grievance but took no action after the initial stages." (*Id.*, PageID.153). He states, "The Plaintiff did not file an appeal of the denial in accordance with the grievance procedure. The Plaintiff was not granted relief for any grievance, and he did not pursue his grievance to the next level (appeal) within the 5 day period in accordance with the grievance procedure." (*Id.*). Defendant attaches

2

the LMDC Inmate Grievance Procedures[2] and maintains that the LMDC grievance procedures provide that an inmate who does not receive a response to a grievance within 45 days "shall be allowed to pursue his grievance to the next level of review (within five (5) working days)[]" and that "the inmate shall not be allowed to move to the next level of review if more than fifty (50) days have passed since the filing of the initial grievance." (DN 54, PageID.153). Defendant states, "Plaintiff did not pursue his grievance to the next level appeal within the 50 day period after no response was received. The Plaintiff filed no appeals of his grievances." (*Id.*).

Defendant cites the affidavit of Charine Bell who avers that she is a grievance counselor at LMDC and receives and manages grievances filed by inmates and pretrial detainees at LMDC. (DN 62, PageID.189). She avers that on February 14, 2022, Plaintiff filed a grievance involving his housing classification. (*Id.*). She states, "On April 11, 2023, the grievance was administratively denied. Specifically, it was found that nothing at the time of the filing of the grievance was in violation." (*Id.*). Bell further avers that Plaintiff "did not avail himself of the LMDC Policies and Procedures for escalating grievances, specifically his right to escalate after 45 days if he did not receive a response to his grievance." (*Id.*).

**B.**

In Plaintiff's response (DN 64) to the motion, he states that he filed a grievance on February 14, 2022, and that "the 1983 lawsuit was filed after LMDC did not avail itself of its policies and procedures and provide a response to plaintiff grievance within the timeframe provided by law." (*Id.*, PageID.202). Plaintiff argues that material issues exist. (*Id.*, PageID.203). He states, "Plaintiff filed suit after the 10 day period in which LMDC had to respond to grievance (see: Defendants LMDC policy & procedure document, resolution stage, (e).). Defendant has not

---

[2] Defendant omitted the exhibits when filing his motion. The Court ordered Defendant to file the exhibits (DN 60), and Defendant complied by filing a supplement to his memorandum and attaching the exhibits. (DN 62).

disputed this in his motion for summary judgement." (*Id.*).  Plaintiff also maintains that he exhausted his administrative remedies because "the escalation of his grievance after 45 days of no response would not have been capable of providing relief in accordance with the action requested in his grievance since Plaintiff was already released from such lockdown by other means depicted by Plaintiff as no longer being on lockdown." (*Id.*).  He cites *Boyd v. Corr. Corp of Am.*, 380 F.3d 989 (6th Cir. 2004), as holding that "administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance." (*Id.*, PageID.204).

Plaintiff further states that LMDC "does not provide intake inmates with an inmate handbook that list LMDC policy and procedures nor is LMDC policy & procedures posted in a conspicuous place for plaintiff to readily have knowledge of such policy & procedures." (*Id.*).  He continues that "therefore, Plaintiff should not be held accountable for not having such knowledge. . . . Also Grievance Counselor did not counsel Plaintiff on LMDC policy & procedures." (*Id.*).

To his response, Plaintiff attaches his affidavit, in which he avers, "I was removed from lockdown at LMDC before 45 days of no response and to the best of my knowledge I have exhausted all administrative remedies capable of providing relief." (*Id.*, PageID.206).  He also reiterates his statement in his response that, "LMDC does not provide inmates coming into jail with inmate handbooks that list policy & procedures.  Nor is it posted throughout jail in conspicuous place.  Plaintiff had no knowledge of such policies." (*Id.*).

In addition, Plaintiff attaches his grievance to his response.  (*Id.*, PageID.207).  The grievance states as follows as the "Brief Statement of Grievance":

> 6:15pm – 6:40pm CO P. Gardner & Sgt Lopez turned open down to 23 and 1 Monday 2/14/22 without being put on disciplinary from an incident that occurred on 2/12/22 they told us that Baker and Clark sent them an email telling them to put us on 23 and 1 lockdown.  This dorm is phone restriction only.  We are not supposed to have any other punishment.  It was all started because of an inmate, Cody Wolfe, was stealing and saying racial slurs.  Sgt. Mudler stated "get all the black guys out

4

of there."  He also made a report to make it look like we were wrong.  He was targeting the smallest person.  Deshawn Witherspoon following him until he reacted.  During the incident officers removed me from the dorm placed me in handcuffs and were mad when I didn't give a statement they put me in a room still with handcuffs behind my back until Seargent Mulder came to talk to me he then threatened me with [illegible] charges.  I was the only inmate pulled from the dorm.

(*Id.*).  As the "Action Requested" in the grievance, Plaintiff states, "Open phone restriction dorm back to open walk and email Baker and Clark about this matter.  I also want a keep away from these officers in fear of retaliation."  (*Id.*).  Plaintiff signed the grievance on February 14, 2022, and a grievance counselor signed it on February 18, 2022.  (*Id.*).

Under "Resolution Response," a staff member wrote, "Per Lt. Green the grievance will be denied due to the housing unit changing to a closed in single cell walk per Admin from that time nothing was in violation."  (*Id.*).  The response was signed on April 11, 2023, more than a year after Plaintiff submitted his grievance.  (*Id.*).  The bottom of the form contains fields which can be checked for two options:  "I am satisfied with the recommendation[]" or "I wish to appeal this recommendation to the Director (You have five (5) working days to forward this form to the Director)."  (*Id.*).  Neither option is checked, and the signature lines for the grievant and grievance counselor are blank.  (*Id.*).

## C.

In his reply (DN 65), Defendant asserts that Plaintiff's argument that he "was not given the opportunity to exercise his right under LMDC grievance policy" is "undermined in Plaintiff's own response where he acknowledges that he did in fact file a grievance."  (*Id.*, PageID.209).  Defendant argues that Plaintiff's cited case, *Boyd v. Corr. Corp. of Am.*, is distinguishable because in *Boyd*, the inmate was required to wait for a grievance officer to make a decision regarding his formal grievance before he could appeal to the warden.  (*Id.*, PageID.209-10).  Defendant argues that, in the present case, "LMDC has an escalation clause for the very circumstance of a grievance

counselor inadvertently failing to timely respond to a grievance.  In such an instance the inmate may appeal to the director of LMDC even though his grievance has no [sic] been denied."  (*Id.*, PageID.210).

Defendant also maintains, "On one hand Plaintiff claims he was not aware of the grievance policy, yet on the other hand he asserts he was knowledgeable enough to file the grievance in the first place."  (*Id.*). Defendant continues, "The record is clear that Plaintiff did know about the grievance process and failed to exhaust all administrative remedies, including the escalation clause if the counselor did not timely respond.  Even if the counselor did not timely respond, he still had remedies available that he did not avail himself of before filing this action."  (*Id.*).  He argues that Plaintiff "had a remedy available, to escalate the grievance in 45 days, and failed to do so."  (*Id.*).

Defendant further states that Plaintiff alleges that his grievance was rendered moot because he was moved from restrictive housing before the time to exhaust administrative remedies expired. (*Id.*).  He asserts, "This is not contemplated in the PLRA and for good reason.  Under Plaintiff's logic, once the alleged constitutional violation ceases, the duty to exhaust administrative remedies under the PLRA would likewise cease."  (*Id.*).  Defendant continues, "This would render the PLRA meaningless, particularly in instances where the alleged violation is short in duration.  Plaintiff has cited no law supporting his contention."  (*Id.*).

### III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the

moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted).

## IV.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516,

524 (2002)).  Failure to exhaust administrative remedies is an affirmative defense, *id.* at 216, which the defendant has the burden to plead and prove by a preponderance of the evidence.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. at 532.  To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison.  *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.  To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established administrative process.  *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford v. Ngo*, 548 U.S. at 87.  "[A]n inmate does not exhaust available administrative remedies . . . when the inmate filed such a grievance but 'did not appeal the denial of that complaint to the highest possible administrative level[.]'"  *Id.* (quoting *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)).  "'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'"  *Woodford v. Ngo*, 548 U.S. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).  An inmate must demonstrate that he has exhausted all available administrative remedies; when he fails to do so, dismissal of the complaint is appropriate.  *See, e.g.*, *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003).

**A.**

The LMDC Grievance Procedures set forth the following:  "A grievance about a specific incident is to be filed within five (5) working days after the incident occurs."  (DN 62, PageID.194).  "The grievance shall include all aspects of the issue that the grievant wants to be addressed and shall specifically identify the staff involved." (*Id.*).  "Response to the grievance is to be within ten (10) working days from receipt of the grievance unless special circumstances require additional attention." (*Id.*, PageID.195).  "The Grievance Counselor shall log the response, make a copy and return the original grievance to the inmate for their signature to verify receipt of a response." (*Id.*).  "The inmate will have five (5) working days after the receipt of the resolution to decide whether to appeal to the next level." (*Id.*).  "If the grievant is not satisfied with the outcome of the resolution response, they may appeal in writing to the Director/designee within five (5) working days after receipt of the resolution response." (*Id.*).  "An inmate who does not receive a response within forty-five (45) days from the filing of the grievance shall be allowed to pursue his grievance to the next level of review (within five (5) working days).  The inmate shall not be allowed to move to the next level of review if more than fifty (50) days have passed since the filing of the initial grievance." (*Id.*).

**B.**

Plaintiff filed the original complaint on February 28, 2022.  Plaintiff signed his grievance on February 14, 2022, and the grievance was signed as received by the grievance counselor on February 18, 2022.  Under the LMDC grievance procedures, the response was due within 10 working days of receipt of the grievance, or, in this case, on March 4, 2022.  Therefore, Plaintiff filed the original complaint before the response to his grievance was due.  There is no dispute that LMDC did not respond to Plaintiff's grievance within 10 working days or that Plaintiff took no

further steps to pursue the grievance process after initially filing it.  Defendant has established that, under the LMDC grievance procedures, when Plaintiff did not receive a response within 45 days, he was allowed to move to the next level of review within five days and that he failed to do so.  Upon review, the Court finds that Defendant has met his burden to establish that Plaintiff failed to exhaust his administrative remedies before filing this action.

The burden shifts to Plaintiff to produce specific facts supported by evidence demonstrating a genuine issue of fact for trial on the issue of exhaustion.  Plaintiff argues that "the escalation of his grievance after 45 days of no response would not have been capable of providing relief in accordance with the action requested in his grievance since Plaintiff was already released from such lockdown by other means depicted by Plaintiff as no longer being on lockdown."  However, as the Sixth Circuit Court of Appeals has explained, "To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and even where [the prisoners] believe the procedure to be ineffectual or futile. . . ."  *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal citations and quotation marks omitted).  "[T]he PLRA's exhaustion requirement is designed to give prison officials a fair opportunity to address a prisoner's claims on the merits before federal litigation is commenced."  *Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017) (citation omitted).  To exhaust a claim, a prisoner must proceed through all of the steps of a jail's grievance process, because "'an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so . . . .'"  *Ware v. Azakoba*, 1:21-CV-00002-GNS, 2022 U.S. Dist. LEXIS 247836, at *4 (W.D. Ky. July 1, 2022) (quoting *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)).

Therefore, Plaintiff's belief that pursuing his grievance to the next level would have been futile did not relieve him of the exhaustion requirement, and this argument is unavailing.

Plaintiff also cites *Boyd v. Corr. Corp of Am.*, for arguing that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance" and that his grievance was properly filed and was not answered until April 11, 2023.  However, as Defendant points out, *Boyd* is distinguishable from the instant case because in *Boyd*, the inmate "was required to wait for a grievance officer to make a decision regarding his formal grievance before he could appeal to the warden."  *Boyd*, 380 F.3d at 996.  Here, however, the LMDC grievance procedures allow an inmate who does not receive a response within 45 days to pursue his appeal to the next level within 5 days.  Therefore, LMDC's failure to timely respond to Plaintiff's grievance within 10 days did not foreclose Plaintiff from pursuing his grievance to the next level, and this argument is also not persuasive.

Finally, Plaintiff argues that he did not pursue his grievance beyond its initial filing because LMDC "does not provide intake inmates with an inmate handbook that list LMDC policy and procedures nor is LMDC policy & procedures posted in a conspicuous place for plaintiff to readily have knowledge of such policy & procedures."  However, this argument was addressed and rejected by the United States District Court for the Southern District of Ohio in a similar case in *Thomas v. McDowell*, No. 2:10-cv-152, 2013 U.S. Dist. LEXIS 130517 (S.D. Ohio Sept. 12, 2013).  There, the inmate argued that he should be excused from his failure to properly exhaust his administrative remedies because "the institution never informed him how to participate in the informal complaint, grievance and appeal process, and that he was unaware that the failure to properly exhaust his administrative remedies would result in the dismissal of his federal claims under the PLRA."  *Id.* at *10.  The court found that "[t]he Sixth Circuit has rejected the argument

that the failure of a facility to explain the grievance policy or the PLRA excused the inmate's failure to exhaust." *Id.* at \*11 (citing *Napier*, 636 F.3d at 221-222 n. 2) ("A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy."); *Brock v. Kenton Cnty., KY*, 93 F. App'x 793, 797-798 (6th Cir. 2004) (rejecting inmate's argument that exhaustion should be excused because inmates were not aware of the jail's grievance system)). Quoting the Eighth Circuit, the district court found, "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.'" *Thomas v. McDowell*, 2013 U.S. Dist. LEXIS 130517, at \*12 (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)); *see also Albino v. Baca*, 697 F.3d 1023, 1035-1037 (9th Cir. 2012) (ignorance of grievance procedure and prison's failure to inform inmate of procedure does not make grievance procedure unavailable); *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 272-73 (10th Cir. 2003) (holding that district court did not err in rejecting prisoner's claim that his unawareness of the grievances procedure excused the PLRA's exhaustion requirement); *Willis v. Mohr*, No. No. 1:11-cv-808, 2013 U.S. Dist. LEXIS 152914, at \*23 (S.D. Ohio Oct. 24, 2013) (rejecting inmate's argument that "the warden, inspector of institutional services or the chief inspector thwarted his ability to comply with the procedures by failing to advise him of the grievance procedures or by failing to volunteer a copy of the grievance procedures").

Moreover, Plaintiff's lack of knowledge of the grievance procedures is undermined by the fact that he filed a grievance and that the face of the grievance form he filed reflected that there was an appeals process by stating on the form: "I am satisfied with the recommendation[]" or "I wish to appeal this recommendation to the Director (You have five (5) working days to forward

this form to the Director)." Therefore, Plaintiff's alleged lack of knowledge of the grievance procedures does not excuse Plaintiff's failure to exhaust, and this argument is also without merit.

For these reasons, the Court finds that Defendant has met his burden to show that Plaintiff failed to exhaust his administrative remedies before filing suit and that Plaintiff has failed to establish the existence of a genuine issue of material fact on the issue of exhaustion.

**V.**

For the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (DN 54) is **GRANTED**. The Court will enter a separate Judgment dismissing the action and denying all pending motions as moot.

Date:   February 2, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:      Plaintiff, *pro se*
         Counsel of record
4414.010